THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSTON BLACKHORSE,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR NEW TRIAL AND MOTION FOR ACQUITTAL**<br><br>Case No. 4:26-cr-00012-AMA<br><br>District Judge Ann Marie McIff Allen |

Defendant Johnston Blackhorse was found guilty of Receipt of Child Pornography and Possession of Child Pornography by a jury of his peers. He moved for a new trial and for judgment of acquittal notwithstanding the verdict.[1] After full briefing by the parties, the Court set the matter for hearing on June 23, 2026.[2] During that hearing, Mr. Blackhorse requested additional time to procure additional evidence. The Court allowed the continuance and Mr. Blackhorse twice supplemented his briefing.[3] The Court held a final hearing on August 31, 2026.[4] Because Blackhorse fails to show a new trial is required by the interests of justice, his motion for a new trial is DENIED. And because the evidence, viewed in the light most favorable to the United States, sufficiently proved the elements of each offense beyond a reasonable doubt, Blackhorse's motion for acquittal is likewise DENIED.

[1] Dkt. 65, 66.
[2] Dkt. 68, 69, 74, 75.
[3] Dkt. 87–88, 91–92.
[4] Dkt. 96.

## I. FINDINGS OF FACT[5]

In June 2015, Blackhorse pleaded guilty and was convicted of Possession of Child Pornography and sentenced to a term of imprisonment followed by a lifetime term of supervised release. In 2019, Blackhorse transferred his supervised release to Utah and enrolled in the Tribal Community Reentry Court (TCRC) program.

On February 6, 2025, probation officers Frank Davis and Cordell Wilson visited Blackhorse at his home within the borders of the Navajo Nation reservation near Aneth, Utah.[6] The officers timed their visit to coincide with the monthly TCRC hearing scheduled for the next day and generally did so given the area's remoteness. As a TCRC enrollee, Blackhorse knew about this practice.

Blackhorse greeted the probation officers outside his home; but all three eventually went inside Blackhorse's home. No one else was inside. The officers saw Blackhorse's computer and both officers knew the computer belonged to Blackhorse. PO Davis examined the computer and discovered a forensic wiping program, CCleaner, had been installed and used just prior to the visit.

When PO Davis asked Blackhorse about the CCleaner program, Blackhorse denied any knowledge of it and said he could not explain why it was on his computer. However, Blackhorse admitted that no one else used his computer. The officers seized

[5] The following facts were developed during trial.
[6] Government's Exhibit 10.

Blackhorse's computer for further examination. Officers also searched the immediate area for any additional electronic devices, but found none.

Probation more thoroughly examined Blackhorse's computer and located several child pornography files in deleted space. As a result, investigators obtained a federal search warrant and the device was re-examined by a Department of Homeland Security Investigations computer forensics agent (CFA), Jarad Larsen.

CFA Larsen determined that Blackhorse was the sole owner and operator of the device. The only user-created account on the computer listed Blackhorse's name, as did the only operating system.[7] CFA Larsen also found numerous images of Blackhorse on the device, including his driver's license as well as a selfie of him holding the same.[8]

CFA Larsen found six[9] child pornography images on the device, all in deleted space. One of those child pornography files retained a file path.[10] That file path showed the file originally existed in allocated space under Blackhorse's username in his Mozilla Firefox folders and that it came from a child pornography website that appeared to be a spoofed Youtube site. The web address included the word "Youtube" and three "+" signs as part of the web address. CFA Larsen testified that, in his expert opinion, individuals who distribute child pornography online generally take steps to ensure they make it

---

[7] Government's Exhibits 5b and 5c.
[8] Government's Exhibits 5d and 5e.
[9] While Blackhorse has at times expressed that he was "surprised" by the presentation of the sixth image, he has never denied that the image was included in CFA Larsen's forensic report provided to Blackhorse prior to trial, nor has he disputed the government's assertion that he viewed the report on three separate occasions. Indeed, Blackhorse affirmatively states he reviewed the forensic report prior to trial. *See* Dkt. 75 at 7.
[10] Government's Exhibit 5j.

available to only like-minded individuals. They do not make it generally available such that individuals can accidentally or unwittingly stumble upon it.

CFA Larsen also uncovered evidence that showed Blackhorse used the computer to access other files with names indicative of child pornography located on a separate electronic storage device.[11] Specifically, CFA Larsen found an artifact showing that Blackhorse accessed a file titled: "LTV46 PTHC 2012 -- Best Of 2010-2011 Compilation Vol. 1 (caligvla, 11yo, 12yo, 10yo, kids, pedo, r@ygol.wmv" from a device plugged into a USB port. CFA Larsen testified that the terms PTHC (standing for pre-teen hardcore), caligvla, pedo, r@ygold, kids, pedo, and the listed ages ("11yo, 12yo, 10yo") are all commonly used by the community who consumers child pornography and thussuggested the file may have contained child pornography. The title also ended in "wmv" which CFA Larsen testified meant the file was a video. The artifact showed the file was opened at least twice approximately four hours apart in June 2024, under Blackhorse's user account.

Additionally, CFA Larsen found substantial evidence that Blackhorse extensively used the CCleaner program. CFA Larsen testified that CCleaner is a commercially available forensic program primarily used to delete and overwrite data. To use the program, a user must download it, run it, and then manually select the files, folders, or directories to forensically wipe.

[11] Government's Exhibit 5i. The device itself was not recovered by law enforcement and thus not entered into evidence.

CFA Larsen found hundreds of artifacts relating to CCleaner on Blackhorse's device, demonstrating Blackhorse repeatedly used the program for years.[12] CFA Larsen also found an online conversation between Blackhorse and another person in 2024 where they discussed CCleaner.[13] Specifically, the two discussed using CCleaner to remove files ahead of a visit from a parole officer. CFA Larsen also confirmed that Blackhorse manually ran the program at least twice in less than 24 hours before the probation visit on February 6, 2025.[14]

Blackhorse has repeatedly stated that he identifies himself as a pedophile and defined that term as a person having a perverse sexual interest in children.[15]

After Blackhorse's arrest, he made a recorded phone call to his mother.[16] Blackhorse revealed that probation had conducted a forensic examination on his device and found child pornography files. During the phone call, Blackhorse repeatedly apologized and said "it's all my fault."

---

[12] The jury received exhibits showing Blackhorse ran the program on his device at least as early as July 2022 and as recent as February 6, 2025. Government's Exhibit 5f.
[13] Government's Exhibit 5g.
[14] Government's Exhibit 5h.
[15] Government's Exhibits 8 and 9.
[16] Government's Exhibit 7.

## II. CONCLUSIONS OF LAW

### A. Blackhorse fails to meet his burden to show that a new trial is required in the interests of justice

#### *1. Legal Standards*

A motion must include a succinct statement of the relief sought as well as a recitation of relevant facts, supporting authority, and argument.[17] Upon a defendant's motion, a trial court may grant a motion for new trial "if the interest of justice so requires."[18] Such motions are "not regarded with favor and should only be granted with great caution."[19] A defendant is not entitled to a new trial when he received a fair trial, even if imperfect.[20]

A motion for new trial premised on newly discovered evidence must demonstrate each of the following five factors: 1) the evidence was discovered after trial; 2) the defendant exercised reasonable diligence in discovering it; 3) the new evidence is not "merely impeaching;" 4) the new evidence is material to principal issues; and 5) the new evidence would probably produce an acquittal at a new trial.[21] A defendant must satisfy all five factors to carry their burden.[22]

---

[17] DUCrimR 12-1.
[18] FED. R. CRIM. PRO. 33(a).
[19] *United States v. Thompson*, 171 F.4th 1323, 1330 (10th Cir. 2026).
[20] *See, e.g.*, *United States v. Dermen*, 143 F.4th 1148, 1170 (10th Cir. 2025).
[21] *Thompson*, 171 F.4th at 1330-31 (citing *United States v. Cordova*, 25 F.4th 817, 827 (10th Cir. 2022)).
[22] *Id.* at 1331.

Evidence is "new" if it did not exist or was not knowable to a defendant at the time of trial.[23] A defendant proffering new evidence as a basis for a new trial must demonstrate that the evidence is admissible under the rules of evidence.[24] To be material, evidence must establish a reasonable doubt where none previously existed.[25] Additionally, when the new evidence challenges some evidence presented at trial, if there is sufficient evidence to support the conviction without the challenged evidence, the new evidence would not probably result in acquittal.[26]

A motion for new trial based on juror misconduct or bias must demonstrate actual bias or circumstances that "compel an imputation of inherent bias to the juror as a matter of law."[27] In determining allegations of juror misconduct or bias, a district court has "wide discretion in deciding how to proceed" and need not conduct an evidentiary hearing based on "thin allegations."[28]

*2. Analysis*

Blackhorse fails to provide the Court with any relevant legal authorities to justify his motion for a new trial. Additionally, when the appropriate legal authorities are

---

[23] *See United States v. Orr*, 692 F.3d 1079, 1099-1100 (10th Cir. 2012) (distinguishing between evidence that is "newly available" and evidence that is new and requiring the latter in the context of a motion for new trial); *United States v. Kanodia*, 943 F.3d 499, 512 (1st Cir. 2019) (holding that online materials that existed at the time of trial were not "new" such that a new trial was required).

[24] *See*, *United States v. Hill*, 737 F.3d 683, 688-89 (10th Cir. 2013).

[25] *United States v. Agurs*, 427 U.S. 97, 112-13 (1976) ("If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.").

[26] *United States v. Caldwell*, 963 F.3d 1067, 1079-80 (11th Cir. 2020).

[27] *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992) (quoting *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986)).

[28] *Id.* (quoting *United States v. Cattle King Packing Co.*, 793 F.2d 232, 243 (10th Cir. 1986)).

considered, they demonstrate that Blackhorse fails to meet his burden to show that a new trial is required in the interests of justice.

a. Blackhorse fails to demonstrate that "new evidence" warrants a new trial.

Blackhorse identifies the following as "new evidence" warranting a new trial: 1) his allegation that the third child pornography image published to the jury was "age difficult"; 2) a Wikipedia article and advertisement information for CCleaner; and 3) online conversations regarding CCleaner. None of these items, considered individually or collectively, meet Blackhorse's burden to warrant a new trial.

i. The proposed evidence is not "new."

First, the Court finds none of the identified items are "new" because all of them were known or knowable to Blackhorse at the time of trial. All of the identified items existed at the time of trial and could have been discovered through reasonable diligence. The Court notes that Blackhorse insisted on invoking his speedy trial rights and proceeding to trial on the first setting.

Blackhorse had access to all child pornography images found in his computer prior to trial, including those published to the jury. Indeed, Blackhorse viewed the forensic report containing the images on three separate occasions. He had sufficient opportunity to make any assessments relating to the child's approximate age in the third image published to the jury. To the extent Blackhorse believed the image did not depict a child, he could have produced evidence to that end at trial, but he chose not to do so. As the record stands, CFA Larsen unequivocally testified that all of the images he identified as

child pornography, including the three images presented to the jury, depicted children. Even now, Blackhorse fails to present any evidence outside his own unsworn opinion that any of the identified child pornography images do not depict children.[29]

Similarly, the Court finds the Wikipedia article and online advertisement information for CCleaner existed at the time of Blackhorse's trial and could have been discovered through due diligence.[30] As to the Wikipedia article, Blackhorse also fails to demonstrate that it would have been admissible under the rules of evidence.

The Court also concludes that the online conversations regarding CCleaner were likewise in existence at the time of trial and could have been discovered by Blackhorse through reasonable diligence.[31] Indeed, the online conversations in which Blackhorse participated were of course known to him at trial. The Court finds Blackhorse also fails to demonstrate that these online conversations would have been admissible. The messages clearly include at least one level of hearsay and some of the messages (i.e. those that do not include him) lack foundation. Because Blackhorse fails to show that the evidence is "new," and that he exercised reasonable diligence in discovering it, the Court finds he is not entitled to a new trial.[32]

---

[29] *See United States v. Latimer*, 780 F.2d 868, 870 (10th Cir. 1985) (upholding denial of a motion for new trial because defendant failed to present any evidence to support his claim that there was an agreement to not charge the informant's wife outside of his own unsupported opinion).
[30] *See* Dkt. 87, pp. 11, 14-21.
[31] *See id.* at pp. 10, 12-13, Dkt. 97.
[32] To the extent Blackhorse contends the proffered CCleaner evidence also constitutes a *Brady* violation, the Court rejects his argument. Blackhorse cannot demonstrate the government exclusively possessed or controlled the evidence. *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."). Additionally, for

ii. The proposed evidence is not "material" or likely to result in acquittal upon retrial.

Second, the Court finds that Blackhorse does not show that the proffered evidence is material or likely to result in an acquittal.

The Court finds Blackhorse's allegation concerning the child in the third image published to the jury is (at best) impeaching. Blackhorse merely wishes to challenge CFA Larsen's estimation of the child's age. But given there were multiple images (some shown and others not shown during trial)[33] and the jury needed to find only that Blackhorse received and possessed "any" child pornography material, the Court concludes the new evidence would relate only to impeachment and would not be material or likely to result in an acquittal upon retrial.

The Court finds Blackhorse's evidence concerning the purpose of CCleaner is likewise merely impeaching and not material or likely to result in an acquittal. The sum total of Blackhorse's argument is that the new evidence demonstrates the CCleaner program can be used for more than deleting files. But CFA Larsen testified it was possible CCleaner had other purposes but that in his experience users primarily utilized it as a forensic wiping tool. Therefore, the Court finds this evidence would, at best, be offered as impeachment.

---

the reasons discussed below, the Court finds Blackhorse fails to demonstrate how the evidence was favorable to him and material. *Erickson*, 561 F.3d at 1163.

[33] Of course upon retrial the United States could choose to publish other images of child pornography.

The Court further finds that Blackhorse's proffered evidence confirms CCleaner is primarily a forensic wiping tool, just as CFA Larsen testified. The CCleaner advertisement states the program can "free up space" and "delete files and data you don't need that can clog your hard drive. This includes cache files, temporary files, and more." It also notes that the program can remove browsing history and cookies to "give your online privacy a boost."[34]




The Court notes that the United States never suggested or argued that CCleaner is an inherently contraband program in all contexts. Instead, the United States contended, based on the evidence, that Blackhorse used the program in this case to attempt to cover

[34] The screen shot is identical to one provided by Blackhorse at Dkt. 87, p. 14, but with larger type.

his receipt and possession of child pornography. That argument relied in large part on Blackhorse's false statements to probation officers that he did not know about or use CCleaner and could not explain why it was on his computer. The Court therefore finds the fact that CCleaner can be used as a legitimate program or has legitimate functions immaterial because that evidence does nothing to rebut the United States' arguments during trial.

The Court finds Blackhorse's evidence of online comments by unidentified people claiming CCleaner was automatically updating in early 2025 also fails to meet his burden of materiality.[35] Even assuming Blackhorse could somehow admit the proffered evidence (which the Court finds above he cannot), the purported experience of other unidentified users of CCleaner does not square with the objective forensic evidence on Blackhorse's device. CFA Larsen testified at trial that there was forensic evidence on Blackhorse's computer that showed CCleaner was manually opened and run twice within 24 hours before probation's visit. So even if it is true that other users experienced CCleaner automatically updating in early February 2025 (or even automatically uninstalling and reinstalling as part of that update), there is no forensic evidence showing Blackhorse suffered the same. And the forensic evidence presented at trial further shows Blackhorse

[35] Blackhorse claims his sister told him there are other online comments that CCleaner was automatically uninstalling and reinstalling as part of this same software update. Those comments have not been provided to the Court.

manually opened and ran CCleaner the day before and the day of probation's visit. As such, this Court finds Blackhorse's proffered CCleaner evidence is not material.[36]

Because Blackhorse fails to carry his burden as to any of the five factors listed in *Thompson*, the Court denies his motion for a new trial based on newly discovered evidence.

b. Blackhorse's speculation concerning potential juror bias fails to demonstrate that a new trial is required.

This Court denies Blackhorse's motion for a new trial based on speculation concerning a single juror's two unheard comments. Assuming *arguendo* the comments were made, Blackhorse cannot specify what the comments were and failed to raise any concern during trial. The Court finds this omission especially telling given the parties addressed independent concerns about another juror, who was then canvassed and ultimately excused. Either Blackhorse did not believe he had sufficient evidence of bias, or he deliberately chose to hold what he believed to be a potential "trump card," until after the verdict. This Court finds Blackhorse's lack of due diligence in addressing the issue during trial fatal to his attack upon the verdict.[37]

The Court further finds that Blackhorse's thin accusations do not warrant an evidentiary hearing (which in any event Blackhorse has not requested) or further

[36] To the extent Blackhorse now seeks to challenge the underlying search warrant based on the same proffered evidence, he fails to provide any substantive argument or supportive case authority. *See* DUCrimR 12-1. As such, the Court rejects his argument.
[37] *Brown v. United States*, 356 F.2d 230, 233 (10th Cir. 1966) (quoting *Spivey v. United States*, 109 F.2d 181, 186 (5th Cir. 1940)) ("A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict.").

evaluation by this Court. Blackhorse cannot repeat what Juror 13 said and cannot assert any actual bias or that such a bias should be imputed as a matter of law. Blackhorse instead offers pure conjecture that some unheard statement was in fact negative towards him and expressed bias. This Court finds such insufficient to warrant further consideration.[38]

c. Blackhorse fails to demonstrate that administrative issues relating to his incarceration require a new trial.

Similarly, this Court denies Blackhorse's request for a new trial on the basis of administrative issues relating to his incarceration during trial. This Court finds Blackhorse's claim that administrative issues prevented him from being sufficiently prepared for trial is belied by the record. On the first day of trial (April 15), the Court asked Blackhorse if he was prepared to proceed with jury selection and he confirmed he was. At no point did Blackhorse raise any concerns with his housing, the organization or placement of his materials, or anything else bearing on his trial readiness. Blackhorse was aware of issues related to his incarceration and did not raise them at the time of trial. As such, the Court rejects his claim that he was so unprepared for jury selection that justice requires a new trial.[39]

d. Blackhorse's unsupported disagreement with the law concerning interstate commerce does not require a new trial.

[38] *Easter*, 981 F.2d at 1553.
[39] *Brown*, 356 F.2d at 233.

Once again, Blackhorse expresses his disagreement with the state of the law concerning interstate commerce. And once again, Blackhorse fails to provide any legal authority showing the jury was improperly instructed as to the element outside of his own opinion. This issue has been briefed and argued *ad infinitum* and the Court adopts its prior ruling by reference that the jury was properly instructed regarding interstate commerce based on binding precedent.

### B. Sufficient evidence supports Blackhorse's convictions for receipt and possession of child pornography.

*1. Legal Standards*

Federal Rule of Criminal Procedure 29 requires that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[40] In ruling on a Rule 29 motion, the Court must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the United States and determine whether a rational jury could have found the elements of the offense proven beyond a reasonable doubt.[41] Courts must give "considerable deference to the jury's verdict,"[42] and do not question a jury's reasonable resolution of the evidence.[43] Evidence supporting a conviction must do more than raise mere suspicion of guilt,[44] but a court must uphold a jury's verdict if "any rational trier of

[40] FED. R. CRIM. PRO. 29(a).
[41] *United States v. Garcia*, 74 F.4th 1073, 1117 (10th Cir. 2023).
[42] *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015).
[43] *Garcia*, 74 F.4th at 1117.
[44] *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999).

fact could have found the essential elements of the crime beyond a reasonable doubt."[45] The court must "determine whether the evidence, if believed, would establish each element of the crime."[46] In doing so, the court should not weigh evidence or consider witnesses' credibility.[47] Judgment of acquittal is only proper if the evidence is "so meager that no reasonable jury could find guilt beyond a reasonable doubt."[48]

2. *Analysis*

This Court finds the evidence and reasonable inferences to be drawn therefrom, viewed in the light most favorable to the United States, would allow a rational jury to find Blackhorse guilty of the charged offenses beyond a reasonable doubt.

a. <u>The evidence sufficiently showed Blackhorse knowingly received and possessed child pornography.</u>

The Court finds that the evidence presented to the jury, along with the reasonable inferences that can be drawn therefrom, was sufficient to show Blackhorse knowingly received and possessed child pornography. There was no dispute that Blackhorse alone used the computer that contained all six child pornography images. The file path for one child pornography file showed it was originally stored under Blackhorse's username, in his Mozilla Firefox folders, and came from a spoofed Youtube website. The Court finds the jury could reasonably conclude this forensic evidence proved Blackhorse manually logged on to his computer, opened his Mozilla internet browser, and navigated to the

---

45 *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001).
46 *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).
47 *See Burks v. United States*, 437 U.S. 1, 16 (1978).
48 *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).

spoofed Youtube site to receive and possess the image. The Court further finds that a rational jury could conclude that the multiple steps required to receive and possess the child pornography image demonstrated that each was done voluntarily and not due to mistake or accident.

The Court further finds the images themselves also showed Blackhorse knowingly received and possessed child pornography. CFA Larsen testified he identified six child pornography images in Blackhorse's computer.[49] The jury viewed three.[50] The jury also heard CFA Larsen's testimony that two of the published images depicted prepubescent female children (approximately 6-8 and 6-9 years old, respectively) and the third image depicted a pubescent female child approximately 12-13 years old. CFA Larsen based this testimony on the children's physical development and explained to the jury that anyone (including Blackhorse) who saw the images would know that they depicted children based on the same observations. Blackhorse does not challenge that the images were pornographic. This Court finds a rational jury could reasonably infer from the images and CFA Larsen's testimony that Blackhorse, by receiving and possessing those images, knowingly received and possessed depictions of minors engaged in sexually explicit conduct.

This Court finds the forensic evidence also showed Blackhorse had familiarity with terms indicative of and uniquely related to child pornography. The jury received

---

[49] Government's Exhibit 3 contained CFA Larsen's full forensic report, including all six images he identified as child pornography.
[50] Government's Exhibit 6.

evidence that Blackhorse used his computer to access a video file multiple times with a title indicative of child pornography.[51] The jury could reasonably conclude that this evidence further demonstrated Blackhorse intended to use his device to knowingly receive and possess child pornography.

Blackhorse's extensive efforts to remove evidence of his crimes also demonstrated his knowledge. All six child pornography files found on Blackhorse's computer appeared in deleted space. CFA Larsen testified that the existence of files in deleted space indicates they previously existed in allocated (or active) space and could be accessed by the user before they were manually deleted. From this evidence, a rational jury could reasonably conclude that Blackhorse took affirmative actions to locate and delete the files, further demonstrating his knowing receipt and possession of the same.

The Court finds the CCleaner evidence also supported Blackhorse's knowing receipt and possession. To use CCleaner, as Blackhorse did for years, he had to download the program, run it, and then manually select the specific files, folders, or directories he wanted to wipe. Importantly, the evidence showed Blackhorse ran the program twice within 24 hours just ahead of the February 6 probation visit, a visit the jury could reasonably infer he expected. And Blackhorse then concealed from probation officers his extensive use of CCleaner, claiming he had no knowledge of CCleaner and could not explain why it was on his computer. A rational jury could find this evidence demonstrated Blackhorse's consciousness of his guilt and proved he was a savvy

[51] Government's Exhibit 5i.

computer user, fully aware of his computer's contents, including the child pornography files he deleted.

The Court further finds the jury received compelling non-forensic evidence of Blackhorse's knowledge. First, the jury heard that Blackhorse had previously been convicted of knowingly possessing child pornography.[52] Consistent with Federal Rule of Evidence 414, the jury could consider that evidence "for bearing on any matter to which it is relevant, including propensity to commit the crimes charged."[53] Second, the jury also heard evidence that Blackhorse describes himself as a pedophile, defined as having a sexually perverse interest in children.[54] Finally, the jury heard Blackhorse's recorded call to his mother.[55] In that call, which Blackhorse made before he was charged, Blackhorse told his mother that probation had found child pornography images on his computer. lackhorse repeatedly told his mother he was sorry and that "it's all my fault." A rational jury could have inferred from this evidence that Blackhorse was confessing his knowing receipt and possession of child pornography. This non-forensic evidence, in addition to the forensic evidence described above, sufficiently demonstrated that Blackhorse knowingly received and possessed child pornography.

---

[52] Government's Exhibit 10.
[53] Dkt. 61, Instruction 44. Blackhorse lodged an objection to the use of Federal Rule of Evidence 414 because that Rule applies in cases of child molestation. Dkt. 99 at 13. Yet Rule 414 describes "child molestation," in relevant part, as "any conduct prohibited by 18 U.S.C. chapter 110." Fed. R. Evid. 414(d)(2)(B). Blackhorse was charged with two counts under 18 U.S.C. § 2252A, which is located in chapter 110 of Title 18.
[54] Government's Exhibits 8 and 9.
[55] Government's Exhibit 7.

This Court finds Blackhorse's contrary assertions fall well short of meeting his burden under Rule 29. Blackhorse does not contend the above-described evidence was insufficient, but rather points to other evidence that was not admitted. This argument is unpersuasive because although evidence such as search history, emails, chats, and private messages may be sufficient to prove knowledge, it is not necessary to do so. As detailed above, the jury received ample evidence of Blackhorse's knowledge. Blackhorse's claims about missing forensic evidence also underscore the highly probative nature of the CCleaner evidence. A rational jury could consider his habitual use of CCleaner to remove various forensic artifacts (such as search history, emails, chats, and private messages) as evidence of his guilt.

This Court finds equally meritless Blackhorse's argument that the evidence merely showed his computer automatically cached images as the result of him unwittingly accessing websites via misleading hyperlinks. Although it's true that one child pornography file retained a file path showing it was in Blackhorse's web browser cache, the evidence established that Blackhorse had to navigate to a child pornography site for the image to be cached and there was no affirmative evidence that he did so via a "misleading hyperlink," meaning a hyperlink leading to child pornography that an innocent user might stumble upon. Indeed, CFA Larsen testified that child pornography distributors are unlikely to create such misleading hyperlinks because they want other like-minded individuals to find the material but do not want law enforcement or the general public to find it. The jury could also reasonably infer that Blackhorse's prolific use of CCleaner evidenced he was aware of contraband files on his device and took

significant steps to locate and remove evidence of them precisely because he knowingly received and possessed them.

The Court also notes the evidence does not indicate that Blackhorse received the other five files at the same time, from the same website, or even via web browser cache. Although the forensics were silent as to how and when Blackhorse received the other five files, a rational jury could consider circumstantial evidence in determining whether he knowingly received and possessed those files. That evidence included the number and content of the files, his repeated use of CCleaner, Blackhorse's prior conviction, his admitted pedophiliac interests, and his admission to his mother. Finally, the jury could also consider the file with a title indicative of child pornography that Blackhorse repeatedly accessed when deciding his knowledge.[56] Based on this evidence, and the reasonable inferences to be drawn therefrom, there was sufficient evidence that Blackhorse knowingly received and possessed child pornography.

b. <u>The evidence sufficiently showed Blackhorse knew the child pornography he received and possessed contained depictions of minors engaged in sexually explicit conduct.</u>

The Court finds there was sufficient evidence to show Blackhorse knew the files he received and possessed contained child pornography. Although Blackhorse contends the six child pornography images were "behind a closed door" and therefore he could not know that they depicted child pornography, the Court finds no evidence to support his assertion. The files had no encryption or password protection and, as the government

[56] Government's Exhibit 5i.

argued to the jury, the images themselves are the best evidence that they contain depictions of minors engaged in sexually explicit conduct. And as detailed above, there was ample evidence from which a rational juror could find Blackhorse knew as much, based on the forensic evidence, his prior conviction, his admitted pedophilic interests, and his admissions to his mother.

Blackhorse points to CFA Larsen's testimony that child pornography distributors often use "coded language" to describe content to argue he was an unwitting receiver and possessor. But CFA Larsen explained to the jury that distributors use such coded language so that other pedophiles can find the material, not so the general public can inadvertently stumble upon it. The Court finds there was certainly evidence from which the jury could reasonably infer Blackhorse was familiar with such coded language (i.e. his repeated access of a file bearing a title with some of that coded language (*i.e.*, terms like "PTHC," "caligvla," and "r@ygol" which terms CFA Larsen addressed in his testimony) and Blackhorse's previous conviction for possession of child pornography).

c. <u>Sufficient evidence supported the interstate commerce element of both counts.</u>

Finally, the Court finds there was sufficient evidence of interstate commerce as to both counts. Blackhorse's argument appears to concern his personal disagreement with the law and not the evidence. Regardless, the jury received uncontested evidence that at least one child pornography image Blackhorse received was transmitted over the internet.[57] And the Court properly instructed the jury that "transmission of images by

[57] Government's Exhibit 5j.

means of the Internet constitutes transportation in or affecting interstate commerce" for receipt of child pornography.[58] Further, the jury also received evidence that the computer used to "produce" the child pornography was manufactured in Malaysia,[59] proving the interstate commerce element for possession of child pornography.[60] This evidence was sufficient to meet the interstate commerce elements as to both counts beyond a reasonable doubt.[61]

Based on the foregoing, the Court hereby DENIES Blackhorse's Motion for Retrial (Dkt. 65) and Motion for Judgment Notwithstanding the Verdict (Dkt. 66).

Signed September 22, 2026.

BY THE COURT

Ann Marie McIff Allen
United States District Judge

[58] Dkt. 61, Instruction 41.
[59] Government's Exhibit 4.
[60] Dkt. 61, Instruction 42.
[61] There was also sufficient evidence to alternatively show federal jurisdiction for Count 2 on the basis that Blackhorse possessed the child pornography in Indian country. *See* Government's Exhibit 10. Blackhorse does not challenge the sufficiency of this evidence.